Joseph Vannini was the inventor and patentee of a mode of drawing lotteries and making schemes for lotteries on the combination and permutation principle, which has been adopted and used by Yates and M'lntyre, by authority from him. Yates M'lntyre haying purchased some lottery privileges in the State of Delaware, proceeded to drawing in a series of classes. Paine Burgess the respts. also lottery brokers, purchased the privilege of drawing a lottery under the act for the benefit of the Trappe School, and issued their scheme upon the plan of Yates M'Intyre or Vannini's patent. Yates M'lntyre applied for an Injunction, which was ordered by Chr. Ridgely; afterwards the case came up before Johns, Jr. Chr., and the bill was dismissed. From this decree the appeal was taken. *Page 66 
 Rogers for appl'ts.
The principal questions in the discussion before Chr. Bidgely were — 1st. That the State court had no jurisdiction, it being a question on a patent and cognizable in the Circuit Court only. 2d. That the acts of Assembly authorizing the drawing of these lotteries did not afford ground for relief; and 3d. That Vannini's patent was not original: that the same plan was to be found in Dobson's Encyclopaedia, tit. Lottery.
As to Jurisdiction. The original act of Congress, 1793, February, gives jurisdiction to the Circuit Court, and "any other courts" c. In the act of 15 Feb. 1819, the words "any other courts" c., are omitted — whence it was contended that the Circuit Court had exclusive jurisdiction. We contest this principle; and again, we say that if the jurisdiction is exclusive as to the mere question of patent, we have a distinct ground of action arising under our laws and the question of patent right coming incidentally up, will not deprive us of relief in the State Court. We admit that the Circuit Court has jurisdiction; but we say that it is not exclusive. Congress may exclude the State Courts, but they have not done it. An express exclusion of the State Courts is necessary or they retain their jurisdiction. The Circuit Court has no jurisdiction where the parties are citizens of the same State. In such case there is no remedy if the State Courts are excluded. If neither party reside in the State where suit is brought the Court has no jurisdiction. Congress has the exclusive power of granting patents. Marshalls bond may be sued in the State Courts and also in the Circuit Court. In certain cases suit must be brought in the State Courts. In relation to the validity of the patent; the specification. A mere method or principle may be patented.
He cited Fessenden, 402; 5 Wheat. 25-6-7; 5 Cranch, 85;Cox Dig. 433; Const. Art. 3, sec. 2; 5 vol. L. U. S.
268; Serg. C. Law, 109; 1 Mason 520; 9 Johns. 581; 12Wheat. 129; 5 Cranch 51; 3 Wheat. appx. 20; Bul. N. P.
77; 2 H. Blac, 463.
Latimer; for respondents.
The application is to restrain defts. from using an invention claimed by Vannini, of which Yates M'Intyre have bought the right for this State. Yates M'Intyre bought the lottery privileges granted by three acts of Assembly in favor of Immanuel Church, 6 Del. L. 74. Middletown Academy, 6 Del. L. 537, and the Newark Academy 5Del. L. 378, 6 Id. 555. Defts. bought the grant in favor of the Trappe School. 4 Del. L. 35. This purchase is said to be illegal. It is denied that the trustees of the Trappe School could assign the grant. The application therefore is to restrain defts. from drawing an unauthorized lottery which is an illegal act.Digest 138. The Court will not restrain a man from doing an illegal act, for it will not presume that he will violate the law.Peters' Rep. Cherokee Nation vs. Georgia, Feb. Term, 1831, of the Sup. Court. (See Mr. Jus. Johnson's opinion.) For such an act the defts. would be liable to a criminal prosecution.
This is not a subject for a patent and the specification does not sustain it. It is a patent for an improvement — for a meremethod. A patent cannot be for a principle, though it may be for the application *Page 67 
of a principle to machinery. 2 II. Black. 482, 485, 495; 1Peters G. E. 341-2; 2 G. L. R. 424; 3 Washg. R. 196. Vannini's improvement is not connected with any construction of matter or application to machinery. It is a mere abstraction. The invention is not new. It is simply the common arithmetical rules of combination and permutation. The invention must be useful — not mischievous or immoral. Lotteries are declared immoral. The patent is for an invention and the specification is of an improvement. This makes it void. 4 Washg. 12; 1 Del. L.; 3 Wheat. 476; Fess. 145, 149; 2 G. L. R. 354.
Second. The State Courts have no jurisdiction of questions under the patent laws. Complainants seek relief chiefly on the ground of a violation of their patent right. 1 Kent. Com. 306; 9 Johns. R.
575, 7 Id. 144; 4 Washg. 109; 1 Kent G. 383.
Rogers, for appellant in reply.
A distinct ground of our going into Chancery was the violation of our rights under our contracts made by authority of the laws of this State. Complainants have purchased under three acts of Assembly. They agreed to give the Newark Academy $50,000; the Middletown Academy $9,000; and Immanuel Church $15,000, for the privilege of drawing under their grants. The defts. come in to draw a lottery unauthorized by the law, and the effect is to deprive complainants of the benefit of their contract. Have we not a right to enjoin them? The Cherokee case has been cited. The distinction is this: we have a vested interest — an acquired right, which is to be violated. We ask the interference of the court in reference to our interests and not in vindication of the public law. Is it not strange that we cannot be protected against a civil injury because it involves a crime. Does the public injury merge our private wrong; or the vindication of the crime redress our injury? The same objection would apply in the Circuit Court of the U. S., and we would be remediless.
The illegality of deft's. lottery is apparent. The law (6 D. L. 35,) grants to the trustees of the Trappe School power to draw a lottery to raise $600. The grant to them is personal and is confined to them or a majority of them. They are required to give bond, c. Yet no bond has been given — the trust has been assigned without authority, and under this void authority defts. have undertaken to draw, in classes, $30,000.
As to the jurisdiction: the omission in the act of 1800, of the words in the act of 1793, does not exclude the State Courts, and unless Congress expressly excludes the State Courts, the jurisdiction remains. 5 Granch. R. 84.
 Curia advisare vult.
June Term, 1833.
"This cause came before the Court by an appeal from the decree of the Chancellor, made on the 24th of February, 1832, in the Court of Chancery, held at Newcastle, by which the Bill filed in that Court was dismissed and the Injunction, which had been issued to restrain Paine Burgess from the infringement of a patent right, was dissolved. The Bill states that Vannini is the original inventor of a plan for constructing and drawing lotteries, and that he had *Page 68 
obtained a patent therefor. That a contract was made between the plffs., by which Yates M'Intyre acquired the exclusive right of constructing and drawing lotteries within the State of Delaware, according to said invention, in which Vannini has an interest. That Yates M'Intyre in 1825, entered into contracts with the managers of the Newark College lottery, and with the Wardens and Vestry of Immanuel Church lottery, and with the trustees of the Academy of Middletown, by which they agreed to pay to each of those institutions the sums they were respectively authorized by the Legislature of this State to raise by way of Lottery. That they gave bonds with sufficient and approved security for the due performance of their afsd. contracts, and had in progress lotteries founded on said patent and in part on the afsd. acts of assembly. Paine Burgess are charged with having issued notices and schemes for drawing lotteries in this State, and with having adopted and designing to use the plan invented by Vannini in violation of his patent, and pretending to derive the power under an act of the General Assembly of this State to enable the trustees of the Trappe School to raise a sum of money by a lottery. But it is alledged that this act of assembly had not been complied with by the Trustees, by giving the bond to the treasurer of the State of Delaware, which the act required to be given, previous to their entering upon their duties; wherefore the said Paine Burgess did not obtain any authority to draw said lottery. And it is charged that if Paine Burgess are permitted to draw said lottery, they, Yates 
M'Intyre, will sustain loss and injury irreparable. Paine Burgess admit the most important facts set forth in the bill but deny that Vannini is the original inventor of the plan for which he obtained his patent; and that his description of the invention is such as the act of Congress required; and they insist that the patent is null and void: and that the matters and things set forth in the bill exclusively belong to the Courts of the United States.
The case was ably debated on both sides at the last term as to the jurisdiction of the State Courts, in causes arising under the patent laws of the United States; and as to the validity of the patent right to Vinnini; but the court deem it unnecessary to express any opinion on these questions. At the time Yates M'Intyre made contracts for the lottery privileges set forth in their bill we had in force an act of assembly prohibiting lotteries, the preamble of which declares that they are pernicious and destructive to frugality and industry and introductive of idleness and immorality, and against the common good and general welfare. It therefore cannot be admitted that the plffs. have a right to use an invention for drawing lotteries in this State, merely because they have a patent for it under the United States. A person might with as much propriety claim a right to commit murder with an instrument because he held a patent for it as a new and useful invention. But the plffs. say they have in progress lotteries founded on their patent, and in part on three acts of the General Assembly. One of these declares that the managers or a majority of them before entering upon the duties required shall give bonds for the faithful discharge of the trust reposed in them; and further, that those only shall be managers who shall give bonds. One of said acts required that the managers before they proceeded *Page 69 
to draw the lottery should certify to the Governor the time and place of drawing, and that previously to selling any tickets they should give bond for the due and faithful performance of their duty in the sales of the tickets, drawing the lottery, paying the prizes, and managing all the business of said lottery; and of this lottery Yates 
M'Intyre state that they were appointed the managers. And the other act required that the managers, before entering upon the duties required, should give bond for the faithful discharge of the trust reposed in them. The plffs. in their bill state that they, Yates 
M'Intire, entered into certain contracts with the Managers, Vestry and Wardens and Trustees before mentioned, by which they engaged to pay certain sums of money authorized by the legislature of the State, to be raised for them by way of lottery, and that they gave bonds for the due performance of their said contracts; but not one word is said in the bill of any bonds having been given to secure the payment of prizes, or refunding sums paid for tickets in case the lotteries should not be drawn, and which bonds by the said acts of assembly were required to be given before the said lotteries could be drawn or tickets could be sold under them. The plffs. therefore having failed to shew any interest or right in them to draw these lotteries they were not entitled to relief, and the decree of the Chancellor must be affirmed with costs. Taking all the facts stated in the bill to be true, the plffs. by not shewing a compliance with the conditions imposed by the acts of assembly granting these lottery privileges, on which the power to draw the lotteries was to be exercised, appear more justly deserving punishment by way of a criminal prosecution, than protection from the extraordinary powers of a Court of Equity.
 Decree of Chancery affirmed with costs.